Howard WEST and Idris Adams, Citizens, Residents and Qualified Voters of the Second County Commissioner District, Cherokee County, North Carolina, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

W. T. MOORE, Chairman, and Ray C. Sims, Andrew J. Barton, Carlyle Matheson, Jack Simonds and Luther Dockery, constituting the Board of County Commissioners of the County of Cherokee, North Carolina; Homer H. Davidson, Chairman, Cleve Almond and Charles White, constituting the Board of Elections of the County of Cherokee, North Carolina, Defendants.

Civ. A. No. 2705.

United States District Court
W. D. North Carolina,
Asheville Division.

March 4, 1969.

C. E. Hyde, Murphy, N. C., for plaintiffs.

L. L. Mason, Jr., Murphy, N. C., for defendants.

MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

This is a class action instituted by citizens, residents, and voters of the Second County Commissioner District of Cherokee County, North Carolina, for themselves and all others similarly situated, under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and under the Civil Rights Act, 42 U.S.C.A. §§ 1983 and 1988, and under Title 28 U.S.

C.A. § 1343, providing for civil rights and the elective franchise, alleging invidious discrimination resulting from population imbalance in the County Commissioner Districts of Cherokee County, and seeking relief under the provisions of the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201 and 2202. Specifically, the plaintiffs ask this Court to:

1) convene a Three-Judge Court to hear their cause;

2) Declare Chapter 908 of the Session Laws of 1965 of the General Assembly of North Carolina null and void as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and to permanently restrain and enjoin the County Board of Commissioners and the County Board of Elections from holding any other election under the provisions of said Act;

3) That the Court adjudge that the present Board of County Commissioners is unlawfully and improperly constituted; and

4) That the Board of Elections of said County be directed to proceed to hold an election of a valid Board of County Commissioners under the general law of North Carolina at the earliest possible moment.

1. The Act in its entirety reads as follows:
The General Assembly of North Carolina do enact:
*Section 1.* The Board of County Commissioners of Cherokee County shall be composed of six members who shall be elected for a term of four years, and shall be elected from districts as hereinafter provided.
*Sec. 2.* For the purpose of nominating and electing members of the County Board of Commissioners, the county is hereby divided into three districts, to be numbered and designated as follows: District No. 1 shall be composed of Valley Town Township; District No. 2 shall be composed of Brasstown Precinct, Burnt Meeting House Precinct, Murphy North Ward, Murphy South Ward, Peachtree Precinct and Walker School House Precinct; District No. 3 shall be composed of Culberson Precinct, Grape Creek Precinct, Hanging Dog Precinct, Hot House Precinct, Ogreeta Precinct, Shoal Creek Precinct and Unaka Precinct.

This cause was heard before the undersigned, United States District Judge, without a jury, on February 19, 1969, and, after consideration of all the evidence, argument of counsel and briefs, the Court finds the following facts:

## FINDINGS OF FACT

The plaintiffs, Howard West and Idris Adams are citizens, residents and qualified voters of the Second Commissioner District of Cherokee County, North Carolina, and the defendants are the members of the Board of County Commissioners and the Board of Elections for the County of Cherokee. The defendants, W. T. Moore, Ray C. Sims, Andrew J. Barton, Carlyle Matheson, Jack Simonds and Luther Dockery, are members of the Board of Commissioners of Cherokee County and were elected and are now serving pursuant to Chapter 908 of the Session Laws of 1965, entitled "AN ACT TO PROVIDE FOR THE NOMINATION AND ELECTION OF THE BOARD OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY", which was adopted by the General Assembly of North Carolina on June 10, 1965, and is what is usually referred to as a "Local Act", and applies only to Cherokee County.[1] It provides that

*Sec. 3.* Two candidates shall be nominated from each district by each political party for members of the Board of County Commissioners of Cherokee County and at the general elections for county officers in Cherokee County in 1966, and quadrennially thereafter there shall be elected from each district two commissioners, who must be residents of the district they represent. In the general election, the commissioners nominated from each district shall be voted on by the qualified voters of the district in which they were nominated.
*Sec. 4.* At its first meeting after election, the Board of Commissioners shall elect a chairman from its members. In the event of a tie vote for chairman, then each commissioner shall cast for chairman a number of votes equal in number to the total votes cast for all candidates for commissioner in his district in the general election.
*Sec. 5.* The chairman of the Board of County Commissioners shall have a vote on all issues and matters before the

the Board of Commissioners of said County shall be composed of six (6) members who shall be elected for a term of four (4) years and shall be elected from districts as therein provided. The County is divided into three (3) districts designated by the Act as District #1, District #2, and District #3.

The Act provides that two (2) candidates shall be nominated from each district by each political party for membership on the Board in 1966, and quadrennially thereafter there shall be elected from each district two (2) Commissioners who shall be residents of the district they represent. In the general election the nominees from each district shall be voted upon by the qualified voters of the district in which they were nominated. The Board shall elect a Chairman from its members and in the event of a tie vote for Chairman, each Commissioner shall cast for Chairman a number of votes equal in number to the total votes cast for all candidates for Commissioner in his district in the general election. The Chairman shall have a vote on all issues and matters before the Board and, in the event of a tie vote on any matters before the Board, the Chairman shall cast an extra vote to resolve the deadlock. The Act further provides that four (4) members shall constitute a quorum of the Board of Commissioners.

The evidence shows that the population of Cherokee County according to the 1960 Census was 16,335 and that if there were an equal number of persons in each one of the three Commissioner Districts in the County, the mean would be 5,445 persons. Based upon the 1960 Census report for the various townships in the County and from an actual count made by several witnesses from some of the precincts involved, the Districts contain the following population:

| | |
|---|---|
| District #1 | 4,867 |
| District #2 | 6,718 |
| District #3 | 4,750 |

Based upon these figures, the Court has prepared the following table:

| | Population | Deviation from Norm or Mean | Percentage of Deviation |
|---|---|---|---|
| District #1 | 4,867 | −578 | −10.6 |
| District #2 | 6,718 | +1,273 | +23.4 |
| District #3 | 4,750 | −695 | −12.7 |
| TOTAL | 16,335* | | |

\* divided by 3 = 5,445

| | |
|---|---|
| Ratio: Largest District to Smallest (2nd to 3rd) | 1.41 to 1 |
| Largest District to Second Smallest (2nd to 1st) | 1.38 to 1 |

The evidence shows that in the general election of 1966 at the time the present members of the Board of Commissioners of Cherokee County were elected, a total of 6,417 votes were cast for Commissioners in all three Districts, and that said vote was divided by Districts as follows:

| | |
|---|---|
| District #1 | 1,829 votes |
| District #2 | 2,981 votes |
| District #3 | 1,607 votes |

board and in the event of a tie vote on any matters before the board, the chairman shall cast an extra vote to resolve the deadlock. Four members shall constitute a quorum of the Board of Commissioners.

*Sec. 6.* All laws and clauses of laws in conflict with this Act are hereby repealed.

*Sec. 7.* This Act shall be in full force and effect from and after its ratification.

In the General Assembly read three times and ratified, this the 10th day of June, 1965.

An equal number of votes in each District would result in a mean, average or norm of 2,139. Based upon these figures, the Court has prepared the following table:

|  | Votes Cast | Deviation from Norm or Mean | Percentage of Deviation |
|---|---|---|---|
| District #1 | 1,829 | −310 | −14.5% |
| District #2 | 2,981 | +842 | +39.3% |
| District #3 | 1,607 | −532 | −24.8% |
| TOTAL | 6,417* | | |

\* divided by 3 = 2,139

Ratio: Largest District to Smallest (2nd to 3rd)     1.855 to 1

Second Smallest District to Largest (1st to 2nd)     1.629 to 1

———◆———

The Court finds that a comparison of the population figures in the three districts results in an advantage in District #3 over District #2 of 1.41 to 1, and an advantage in District #1 over District #2 of 1.38 to 1. The Court further finds that a comparison of the vote for Commissioners during the 1966 general election shows that a vote in District #3 as compared with a vote in District #2 resulted in an advantage of 1.855 to 1 and that a vote in District #1 as compared with a vote in District #2 resulted in an advantage of 1.629 to 1.

The Court further finds that the North Carolina General Assembly is now in session and will likely remain in session until May or June of 1969.

## CONCLUSIONS OF LAW

■ Since the statute involved in this controversy applies only to Cherokee County, the Court is of the opinion, and therefore holds, that 28 U.S.C.A. § 2281 would have no application to this case. In the case of Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643, Justice Douglas, in speaking for a unanimous Court, said:

"The Court has consistently construed the section as authorizing a three judge court not merely because a state statute is involved but only when a state statute of general and statewide application is sought to be enjoined."

The Court held further that the officers sought to be enjoined must be state officers and must be functioning on a statewide matter, and that these "requirement[s] cannot be circumvented by joining, as nominal parties defendant, state officers whose action is not the effective means of the enforcement or execution of the challenged statute."

■ It is obvious that the plaintiffs are complaining about the unequal representation of the citizens of District #2 on the Board of County Commissioners and in essence are attacking the plan of apportionment contained in the Act of the Legislature. They have therefore attacked the constitutionality of the entire Act. However, this Court must hold that parts of the Act are valid and do not run afoul of the Federal Constitution. The General Assembly of North Carolina has wide power and authority

over municipal corporations of this State. The North Carolina Constitution, Article VII, Section 10, empowers the General Assembly to enact legislation which would divide Cherokee County into County Commissioner Districts, set the term of office of said Commissioners, and to outline the duties and some of the powers of the County Commissioners. In fact, the constitutional question of dividing this particular County into three districts and providing for the election of Commissioners by said districts was passed upon favorably by the North Carolina Supreme Court in the case of Watkins v. Board of Elections, 210 N.C. 449, 187 S.E. 584. So, this Court cannot find that Chapter 908 of the Session Laws of 1965 is unconstitutional in its entirety. This Court therefore holds the provision of providing six (6) County Commissioners for Cherokee County and that they be elected from three (3) County Commissioner Districts in said County for a term of four (4) years is a valid exercise of the power and authority conferred upon the General Assembly by the North Carolina Constitution, and that these provisions do not run counter to the provisions of the Fourteenth Amendment to the United States Constitution.

However, the provisions of the Act which designate certain boundaries for the three (3) County Commissioner Districts in said County in which there is located a substantial unequal number of people, and the provision with reference to the Chairman of the Board having two votes raise constitutional questions which must be remedied.

■ The Supreme Court of the United States has held many times in recent years that the fundamental principle of representative government in this country is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a state or county. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506.

In the case of Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed. 2d 45 (1968), Justice White, speaking for the Court, said:

"When the State apportions its legislature, it must have due regard for the Equal Protection Clause. Similarly, when the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance, or local charter, it must insure that those qualified to vote have the right to an equally effective voice in the election process. If voters residing in oversize districts are denied their constitutional right to participate in the election of state legislators, precisely the same kind of deprivation occurs when the members of a city council, school board, or county governing board are elected from districts of substantially unequal population."

Thus, the principle of "one man one vote" has been firmly imbedded in the federal court decisions and is controlling in this case. However, the Supreme Court in Reynolds v. Sims, *supra,* also said:

"We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters."

In the case of Ellis v. Baltimore, 4 Cir., 352 F.2d 123, Judge Sobeloff said:

"This is not to say that no departure whatsoever from strict population count is ever permissible; but when the formula adopted results in more than a minor deviation, it is at once suspect."

In the case at bar, the disparity is so wide that the constitutional limitation has been transcended. The deviation from the mean, average or norm on a population basis runs as high as 23.4% and on a vote basis as high as 39.5%.

The deviation ratio amounts to as much as 1.41 to 1 and time after time the federal courts have struck down apportionment plans for legislatures, city councils and County Commissioners with less variation than this. This deviation denies equal protection to the inhabitants and voters of District #2. Ellis v. Baltimore, *supra;* Sincock v. Gateley, 262 F.Supp. 739 (D.Delaware 1967); Swann v. Adams, 263 F.Supp. 225 (S.D.Florida 1967); Keil v. Schorr, 282 F.Supp. 608 (D.Delaware 1968).

There was no evidence offered to justify this kind of discrepancy. It appears that Cherokee County is a large, mountainous County extending for a distance of 50 miles in length and 30 miles in width. The Court is aware of the mountainous terrain and of the difficulty with transportation from one section to another. However, there is no evidence to indicate that these problems are any different from those in the surrounding counties of Western North Carolina, and the Court is of the opinion that these problems do not justify the wide discrepancies shown on this record.

■ The Court is of the opinion and so holds that the provisions of Chapter 908 of the Session Laws of 1965 which designate the present boundaries of the three County Commissioner districts in Cherokee County in which there is now located a substantial unequal number of people, and the provision with reference to the Chairman of the Board having two votes, violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

The correction of this problem is essentially a legislative matter—whether it be a realignment of the districts or some other appropriate action. The General Assembly of North Carolina is now in session and this Court has every confidence that it will resolve this matter forthwith in a satisfactory and constitutional manner. Therefore, this Court will refrain from entering an order until the present session of the General Assembly adjourns.